**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**RAYMOND TORRES,**

    Plaintiff,

v.                                               Case No. 8:09-cv-756-T-30EAJ

**EAGLE TECHNOLOGIES, INC.,**

    Defendant.
_____/

## **ORDER**

      In May 2008, Eagle Technologies, Inc. fired Raymond Torres, an Hispanic male, from his job as a security guard at Tampa International Airport for failing his annual drug test. Prior to his termination, Torres was involved in making various complaints to the Department of Labor and the Federal Aviation Commission regarding Eagle's alleged violations of the Service Contract Act. Torres asserts that his termination was a result of ethnic discrimination and retaliation for his involvement in reporting Eagle's violations. He contends Eagle's given reason for firing him, the failed drug test, was pretext.

      The Florida Civil Rights Act and Title VII of the Federal Civil Rights Act prohibit the termination of an employee due to discrimination. Title VII also prohibits an employer from taking retaliatory action against an employee because the employee opposed a discriminatory employment practice. The Florida Whistleblower Act prohibits an employer from retaliating against an employee because the employee reported the employer's violations of a law. The

issue before the Court is whether there is a material factual dispute regarding Eagle's reason for firing Torres. The Court concludes that summary judgment for Eagle is appropriate because Torres has failed to provide sufficient evidence to show that Eagle's proffered reason for the termination (the failed drug test) was pretext.

**Background**

From 2001 to May 31, 2007, Torres, an Hispanic male, was employed by Diamond Security Services ("Diamond") as an armed security guard at Tampa International Airport ("TIA"). Until May 31, 2007, Diamond held a contract with the Federal Aviation Administration ("FAA") to provide security services at TIA. On June 1, 2007, Eagle formally took over the contract at TIA. Torres and other Diamond employees were hired by Eagle to continue providing security services.

Before they were hired, all of the former Diamond employees were required to submit an application to Eagle. As part of the application process, Torres and the other guards underwent a background check, a drug test, and a physical examination. A negative drug test was a prerequisite to employment with Eagle.

The new Eagle employees were given an employee handbook which included information regarding Eagle's substance abuse policy. The policy included a right to appeal the results of a drug or alcohol test. Under the policy, an employee who tested positive could obtain, at the employee's expense, an independent test or the written test result and submit it to independent medical review. The policy further provided that the employee would be suspended during the period of an appeal and any resulting inquiries.

Almost immediately after Eagle formally acquired the contract, the TIA guards met with their immediate supervisor, Richard Rumore, to discuss complaints about Eagle. The guards raised three complaints: (1) Eagle refused to pay for a mandatory sixteen hour training class; (2) Eagle refused to pay for alterations and other costs associated with the guards' new uniforms; and (3) Eagle required mandatory 401K participation. These complaints allegedly constituted violations of the Service Contract Act, 41 U.S.C. §351, and regulations thereunder. Rumore repeated the guards' complaints at a meeting with the Director of Training and Operation, Colonel Polievka, at Eagle's headquarters in Maryland in July 2007.

According to Torres, on July 23, 2007, he sent a letter to Rumore stating that Torres did not contact the Department of Labor ("DOL") but that he did complain to Rumore previously about the same issues. The letter further stated that the TIA guards "are tired of getting threats of loosing [sic] their jobs whenever they have questions about anything." In his deposition, Rumore denies having ever seen the letter.

On July 31, a letter was allegedly sent to the DOL from "A Concerned Officer." Possibly in response to the letter, an investigator from the DOL, Martin Altabas, came to Tampa as part of an investigation. It is unclear from the record whether the investigation was of Diamond or Eagle, or if it started as an investigation of Diamond but was continued as to Eagle. During the investigation, Altabas interviewed the guards. Torres and Ronald Holder, another guard, were off-duty at the time the investigator was at TIA. Altabas left his business card with Torres and Holder's names on it and requested that they be available for

an interview when he returned.[1]  Torres claims that Rumore threatened Torres and Holder with termination if they were involved in reporting the complaints to the DOL.  Following the investigation, the DOL instructed Eagle that it had to pay for the training class and some of the uniform costs.  Torres asserts that following the investigation, Rumore intensified his harassment of Torres and Holder and continued to threaten them with termination.

Almost one year later, on April 25, 2008, a complaint letter was sent to Gail Edwards at the FAA.  The letter included the same complaints that the guards made earlier to Rumore plus a complaint regarding Eagle's failure to pay licensing fees and associated costs for the TIA guards.  None of the guards personally signed the letter and there was no personally identifying information in the letter.  The letter was signed "the Tampa Guards."  Torres states that he drafted the letter with the help of Holder.

Torres also claims that he helped draft another letter to Gail Edwards in early May 2008.  This letter is also signed "the Guards at TIA" rather than by any named individual.  Attached to the letter was a John Hancock 401K statement.  Though the name and social security number are blocked out, Torres asserts that the 401K statement is his.  Torres claims that the statement can be identified as his from a bar code on the paper.  But Eagle denies being able to identify the statement.

On May 8, 2008, Torres had his annual required physical and drug test at Lakeside Occupational Medical Center.  The initial drug screen results came back inconclusive due

---

[1] It is unclear from the record whether Torres's July 23, 2007 letter to Rumore was sent before or after the DOL investigation commenced.  The letter, which was submitted as an exhibit to Torres's Declaration, mentions Altabas's business card with Torres and Holder's name on it.

to a diluted sample. The lab then tested the same sample using gas chromatography mass spectrometry. This drug test came back positive for marijuana.

Upon receiving the inconclusive drug screen result, Eagle headquarters directed Rumore to have Torres surrender his firearm to the TIA police. On or around May 21, 2008, Rumore met Torres in the parking lot when Torres arrived for work. Rumore told Torres that he was suspended pending an investigation and that Torres had to turn in his weapon and ID badge. Torres asserts that he was not told of the inconclusive drug screen result at that time. He claims that Rumore told him that Eagle found out about the letters because Torres's name was on one of them and that Eagle had labeled him the ringleader and a troublemaker. Rumore also allegedly told Torres that Eagle considered firing all of the TIA guards but, instead, was now going to make an example of Torres.

In his deposition, Rumore asserts that he told Torres to take another drug test the next morning. He also said that he informed Torres that he would have to take the other test within 24 hours.

Torres contends that Rumore called him at home on May 22, 2008. During this phone call, Rumore allegedly said, "Eagle 'is really pissed at you, they wanted to make an example to the other guys and suspend you for a couple of weeks with no pay and demote you, but you tested positive for marijuana so now we can terminate you.'" Torres Decl., Dkt. 38, ¶39.

On May 22, 2008, Rumore gave Torres a termination letter which outlined the reason for his termination. It is undisputed that Rumore did not have the authority to make hiring or firing decisions and that Rumore did not make the decision to fire Torres. The termination

letter was signed by Leonard Kraus, Vice President of Quality Assurance at Eagle. The given reason for Torres's termination was a violation of security regulations due to the positive drug test result. When he received the termination letter, Torres questioned Rumore about the inconclusive results. During his deposition, Torres was asked about the conversation that took place at the meeting:

> Q. What was said at that time?
>
> A. After the gear was collected and I signed the gear, he [Rumore] gave me a letter of termination. He told me to read it and sign it.
>
> When I read the part that said that the inconclusive results had came [sic] back the 13th I questioned him. I said, Rick, why didn't you notify me? Why didn't anyone notify me that an inconclusive result had come back? His answer was, I don't know. You're going to have to take it up with Eagle.
>
> Q. Did you take it up with Eagle?
>
> A. No.

Torres Depo., p. 214.

Torres now brings this action against Eagle for a violation of the Florida Drug Free Workplace Act, discrimination and retaliation under Title VII, and a violation of the Florida Whistleblower Act. Eagle moves for summary judgment on all four counts.

**Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Chelates*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49. This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist

a conflict in substantial evidence to pose a question for the fact finder. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

### I. Count One – Florida Drug Free Workplace Act

Torres claims that Eagle violated Florida's Drug Free Workplace Act, Fla. Stat. §440.102, by failing to conduct his annual drug test in accordance with the terms of the statute. An employer has the choice of whether to implement a drug free workplace program under the statute. *Laguerre v. Palm Beach Newspapers, Inc.*, 20 So. 3d 392, 394 (Fla. Dist. Ct. App. 4th Dist. 2009). Eagle is only required to comply with the terms of the statute if Eagle elected to operate a drug free workplace program pursuant to the statute. *Id.* Written notice of the policy to the employees is also required under the statute. *Id.* Though Eagle has an alcohol and substance abuse policy, the Eagle policy is not operated pursuant to the Florida statute. Eagle's employee handbook specifically states that "Eagle Technologies, Inc. fully supports the Drug Free Workplace Act of 1988," which is a federal statute. The handbook makes no representation that Eagle adopted a program under the Florida statute. And Torres supplied no evidence that Eagle did adopt a program under the Florida Statute.[2] Therefore, summary judgment is granted as to Count One.

---

[2] In response to the Motion for Summary Judgment, Torres acknowledges that summary judgment on this count should be denied only if Eagle took advantage of the worker's compensation discount as a drug free workplace. Torres stated that he made a public records request to the State of Florida to determine whether Eagle is certified as a drug free workplace and that he would file the relevant documents when received. Torres never filed any of these documents.

## II. Count Three – Discrimination under Title VII and the Florida Civil Rights Act

The Complaint alleges that Eagle violated Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. 2000e, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. 760.01 et seq., by discriminating against Torres based on his age and ethnicity. In his response to the motion for summary judgment, Torres withdrew his claim for age discrimination. Therefore, the Court will focus only on the alleged discrimination based on ethnicity.

The analysis of a claim under FCRA and Title VII is the same. *Valenzuela v. GlobeGround N. Am., LLC*, 18 So. 3d 17, 21-22 (Fla. Dist. Ct. App. 2009). The initial burden is on Torres to make a prima facie showing of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (U.S. 1973). In the absence of direct evidence of discrimination, he can establish the prima facie case by showing that (1) he is a member of a protected class, (2) that he is qualified for the position, (3) that he suffered an adverse employment action, and (4) that he was treated less favorably than similarly situated employees who are not members of the protected class. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. Fla. 1997). This test "requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Id.*

Torres fails to establish the prima facie case of discrimination based on ethnicity. Torres has not provided any evidence that Eagle discriminated against him. It is clear from his deposition testimony that Torres does not even believe he was terminated due to discrimination. In response to questions on the subject, he repeatedly states that he believes that was fired "because of the letters," meaning the two letters to the FAA.

Torres argues that two other Eagle employees who failed drug tests were treated differently because their termination letters reminded them of their right to an immediate retest. Torres provides no evidence that these other employees were treated substantially differently. Torres's conclusory statements that these two unidentified employees are not Hispanic is not enough. Additionally, it is undisputed that both these employees were terminated for failing their drug tests. Therefore, summary judgment is granted as to Count Three.

## III. Count Four – Retaliation under Title VII

A claim for retaliation under Title VII requires a plaintiff to show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) the adverse employment action was causally related to the protected activity. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. Ga. 2004). Torres cannot establish the prima facie case because he has provided no evidence to support any of these elements. Torres did not even respond to Eagle's motion for summary judgment on this issue.

The only protected activity in which Torres engaged was filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). However, the EEOC complaint was filed on July 15, 2008, two months following his termination from Eagle. Clearly, there is no causal connection between the two events.

## IV. Count Two – Violation of the Florida Whistleblower Act

The Florida Whistleblower Act ("FWA"), Fla. Stat. 448.102, prohibits employers from taking retaliatory action against their employees for reporting violations of laws, rules, or regulations. The statute provides:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> (1) Disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation. However, this subsection does not apply unless the employee has, in writing, brought the activity, policy, or practice to the attention of a supervisor or the employer and has afforded the employer a reasonable opportunity to correct the activity, policy, or practice.
>
> (2) Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer.
>
> (3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

Fla. Stat. § 448.102.

In the Eleventh Circuit, courts apply the same burden shifting framework used in Title VII retaliation cases to claims under the FWA. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). That is, an employee must first make a prima facie showing of retaliation. As with a Title VII retaliation claim, an employee can establish the prima facie case by showing that (1) he engaged in statutorily protected activity, (2) he was subjected to adverse employment action, and (3) there was a causal connection between the events. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employee can

meet these elements, the burden then shifts to the employer to articulate a non-retaliatory reason for its action. *Id.* If the employer can present a non-retaliatory reason, the burden then shifts back the employee to show that the employer's reason is pretext. *Id.*

Torres claims that he was terminated in retaliation for reporting Eagle's violations of the Service Contract Act to governmental authorities in violation of the FWA. There is some doubt as to whether Torres can establish the prima facie case. However, the Court will assume, *arguendo*, that Torres has made that showing because the issue of pretext is dispositive.

Eagle's legitimate, non-discriminatory reason for firing Torres is, of course, that Torres tested positive for marijuana at his annual drug test. To show that this reason is pretext, Torres must provide enough evidence to permit a reasonable fact finder to conclude that the positive drug test was not the real reason for his termination. *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1528 (11th Cir. Ala. 1997). Torres cannot meet this standard.

Torres argues that Rumore told him that Eagle suspended him and then fired him because Eagle believed Torres reported its illegal conduct to the DOL and the FAA. However, the record reveals otherwise. In his declaration, Torres states: "On the evening of May 22, 2008, at my home, I received a phone call from Mr. Rumore who said to me that Eagle 'is really pissed at you, they wanted to make an example of you to the other guys and suspend you for a couple of weeks with no pay and demote you, but you tested positive for marijuana so now we can terminate you.'" Torres Decl. Dkt. 38, ¶39. Torres argues that this

statement is direct evidence of retaliation. But this statement actually shows that Eagle did not terminate Torres in retaliation for reporting Eagle's violations. Assuming Rumore's statement is true, Eagle intended to retaliate but did not actually do so because Torres failed his drug test. Rumore's statement shows that Eagle fired Torres because of the positive drug test results.

In an attempt to provide circumstantial evidence of pretext, Torres makes two arguments: (1) that the drug test result was a false positive and (2) that other employees who failed drug tests were treated differently. Neither of these points support his argument.

First, Torres argues that result of the drug test must be false because he has never used marijuana. The law is clear that an employee's own evaluation and opinion is not a sufficient basis to establish pretext. *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1332-1333 (11th Cir. Ga. 1998). To support his assertion, Torres submitted the negative results of a hair follicle test taken in September of 2008, three months after his positive drug test result. But Torres has not submitted any evidence that a hair follicle drug test can refute the results of a drug test taken three months prior. And to prevail on this issue, it is incumbent on Torres to show not only that the drug test was wrong but also that Eagle knew it was wrong. An employer is entitled to rely on a test result reported by an independent party. There is no evidence that Eagle knew the test result was wrong.

Torres also submitted the decision of an Unemployment Appeals Referee regarding his unemployment compensation application following his termination from Eagle. Initially, Torres was denied unemployment compensation because he was fired due to the failed drug

test. Torres appealed the decision. Though both Torres and Eagle submitted written documentation, only Torres attended the hearing on the appeal. The Appeals Referee reversed the initial unemployment determination but that reversal is not persuasive here. The decision of the Appeals Referee was based on different law and facts that were available at the time. For example, the decision notes that "no evidence has been submitted to show that the drug test was confirmed." Torres Decl., Dkt. 38, Ex. G. Here, there is undisputed evidence that the drug test had been confirmed using gas chromatography mass spectrometry. At the unemployment appeal, the burden was on Eagle to prove misconduct. Here, the burden is on Torres to prove that the misconduct (the failed drug test) was not the real reason for his termination. There is new undisputed evidence before this Court that was not considered by the Appeals Referee. Therefore, the unemployment compensation decision is not probative.

Second, Torres again points out that his termination letter did not notify him of his right to a retest unlike two other Eagle employees who also failed their drug tests. However, it is undisputed that both of those other Eagle employees were also terminated for failing drug tests. This fact only supports Eagle's position that the real reason Torres was terminated was for failing his annual drug test because it is undisputed that Eagle has fired every person who has failed a drug test.

Finally, based on the record evidence, there may be a question of fact whether Torres's suspension was in retaliation for his involvement in reporting Eagle's violations to the government. However, Torres does not claim that the brief suspension pending an

investigation was an adverse employment action.  Therefore, Torres has not established a prima facie case based on the suspension.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant Eagle Technologies, Inc.'s Motion for Summary Judgment (Dkt. 31) is **GRANTED**.

2. The Clerk is directed enter judgment in favor of Eagle Technologies, Inc. and against Raymond Torres.

3. All pending motions are denied as moot.

4. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on June 4, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2009\09-cv-756.msj 31.frm